UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

UNITED STATES OF AMERICA,          )
                                   )
        Plaintiff,                 )
                                   )          No. 6:23-CR-50-REW-HAI
v.                                 )
                                   )          RECOMMENDED DISPOSITION
ARTHUR CLINTON POWERS JR.,         )
                                   )
        Defendant.                 )
                                   )

*** *** *** ***

Federal prisoner Arthur Clinton Powers, Jr. has moved to vacate his conviction and sentence under 28 U.S.C. § 2255 (D.E. 50), supported by a memorandum (D.E. 61). The government responded in opposition, with supporting documentation. D.E. 65. Powers replied. D.E. 69. The record contains a transcript of his sentencing. D.E. 53.

On March 3, 2026, the undersigned entered an Order setting the stage for an evidentiary hearing on Powers's claim that trial counsel failed to file a notice of appeal when asked to do so. D.E. 72. In that Order, the Court also described its anticipated ruling on Powers's other claims. *Id.* The Court provided a CJA financial affidavit to Powers and ordered him to file it so that appointment of counsel could be finalized. *Id.* However, Powers did not file a financial affidavit. Instead, he filed Objections to the Court's Order (D.E. 73) and an affidavit of facts in support of his claims (D.E. 74).

Powers's Objections include his concerns about an evidentiary hearing on the appeal-request issue:

> Defendant understands the Court's reasoning of scheduling this hearing to resolve the factual dispute between Defendant's account and counsel's affidavit. However, after discussing the matter further, Defendant's mother advised that she

does not recall the events surrounding the phone call and does not wish to participate as a witness. Because Defendant no longer has corroborating testimony and does not wish to require his elderly mother to testify, Defendant respectfully request that the Court consider alternative to transporting Defendant for an in-person hearing.

Therefore, Defendant objects to an in-person evidentiary hearing and do[es] not wish to be transported for a hearing, Defendant respectfully request[s] that the Court consider resolving the claim based on the existing record, including the affidavits already submitted.

Alternatively, Defendant request[s] that the Court permit participation by video conference or telephone rather than requiring the judicial or executive to fund physical transport. If the Court determine[s] that an evidentiary hearing is necessary and the Defendant's presence is required, Defendant respectfully elects leave to withdraw the ineffective-assistance claim related to counsel's failure to file a notice of appeal so that the Court may proceed to resolve the remaining issues raised in the § 2255 motion.

Defendant knowingly and voluntary waives any right to an evidentiary hearing on this claim and respectfully request that the Court cancel the scheduled evidentiary hearing "if" his presence is required. Defendant further request[s] that the Court proceed to resolve the remaining issue[s] raised in his § 2255 motion based on the existing record.

D.E. 73 at 5-6.

The undersigned now recommends that Powers's claim related to the lack of appeal be denied on the existing record or, alternatively, that his request to withdraw that claim be granted and it be denied as withdrawn. The Court also recommends denial, on the existing record, of Powers's remaining claims and that no certificate of appealability issue. Following entry of this Recommended Disposition, Powers may lodge further objections to the District Judge, in addition to the pending objections already filed (D.E. 73).

## I. Background

Powers first came before the Court in September 2023 on a Complaint alleging possession with intent to distribute 500 grams or more of a mixture or substance containing

methamphetamine. D.E. 1. An Indictment containing the same single charge soon followed. D.E. 8. Throughout the proceedings, Powers was represented by appointed attorney Christy J. Love.

In April 2024, Powers pleaded guilty to the single Count of the Indictment. D.E. 34. He admitted in the plea agreement that a search of his vehicle "resulted in the seizure of approximately 4.5 pounds of meth" and that he "gave a post-*Miranda* statement in which he admitted that he was bringing the meth to Laurel County to distribute to a drug customer." D.E. 31 ¶ 3(e). He agreed the relevant conduct included "between 1.5 kilograms and 5 kilograms of a mixture or substance containing meth." *Id*. ¶ 5(b). The plea terms included a waiver of the right to appeal the guilty plea and conviction but reservation of the right to appeal the sentence. *Id*. ¶ 7. And Powers waived his collateral-attack rights aside from claims of ineffective assistance of counsel. *Id*. The plea agreement observed that Powers faced potential statutory incarceration of "not less than 10 years and not more than life." *Id* ¶ 4.

By Judgment entered August 7, 2024, Judge Wier sentenced Powers to 250 months of incarceration. D.E. 43. This was below Powers's Guidelines Range of 262 to 327 months, as determined by the Probation Office's PSR (D.E. 42 ¶ 91) and by Judge Wier at sentencing (D.E. 53 at 12, 32, 52).

Powers was found to be a "career offender" under U.S.S.G. § 4B1.1. As noted in paragraph 21 of the PSR, Powers had "at least two prior felony convictions of either a crime of violence or a controlled substance offense (Harrison County Superior Court #31D01-0601-FA-000086, Jefferson Circuit Court #15-CR-003205-004, and Jefferson Circuit Court #20-CR-001189-002)[.]" D.E. 42 at 4. District Judge Wier agreed: "You're certainly a career offender, no doubt about that, and it's well established." D.E. 53 at 45. Being a "career offender" raised Powers's offense level from 32 to 37. *Id*. at 11.

3

Powers did not appeal.  But that lack of appeal is one of the issues raised in this postconviction motion (D.E. 50, 61).  Powers argues that his lawyer should have challenged his career-offender designation and that she failed to file a notice of appeal when instructed to do so.

## II.  General Legal Standards

Under § 2255, a federal prisoner may seek habeas relief because his sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such a sentence, or the sentence exceeds the maximum authorized by law.  28 U.S.C. § 2255.  To prevail on a § 2255 motion alleging constitutional error, a defendant must establish that the error had a "substantial and injurious effect or influence on the proceedings."  *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).  A § 2255 movant bears the burden of proving his or her allegations by a preponderance of the evidence.  *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (per curiam).

The Court recognizes that Powers is proceeding *pro se*, without the assistance of an attorney.  The Court construes *pro se* motions more leniently than motions prepared by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Castro v. United States*, 540 U.S. 375, 381-83 (2003).

Powers's grounds for relief allege ineffective assistance of counsel ("IAC") in violation of his rights under the Sixth Amendment.  To successfully assert an IAC claim, a defendant must prove both deficient performance and prejudice.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

To prove deficient performance, a defendant must show "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances."  *Strickland*, 466 U.S. at 688.  But "a court must indulge a strong presumption that counsel's conduct falls within the wide range of

reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. at 689 (internal quotations omitted). The Supreme Court has repeatedly

> said that counsel should be strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment, and that the burden to show that counsel's performance was deficient rests squarely on the defendant. . . . It should go without saying that the absence of evidence cannot overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance.

*Burt v. Titlow*, 571 U.S. 12, 22-23 (2013) (citations and quotation marks omitted).

To prove prejudice, a movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome," which "requires a substantial . . . likelihood of a different result," "not just [a] conceivable" one. *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011). "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. When evaluating prejudice, courts generally must consider the "totality of the evidence." *Strickland*, 466 U.S. at 695. Courts may approach the *Strickland* analysis in any order, and an insufficient showing on either prong ends the inquiry. *Id.* at 697.

To show prejudice in the sentencing context, a movant must establish that his "sentence was increased by the deficient performance of his attorney." *Spencer v. Booker*, 254 F. App'x 520, 525 (6th Cir. 2007) (citing *Glover v. United States*, 531 U.S. 198, 200 (2001)).

### III. Prior Convictions and Career Offender Status

As noted, Powers was found to be a career offender under the Sentencing Guidelines. *See* PSR ¶ 21. That designation requires, among other things, that "the defendant has at least two prior

felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). "Controlled substance offense" is defined as a felony "under federal or state law" that prohibits intentional distribution of a controlled substance. *Id*. § 4B1.2(b).

Powers does not dispute that he has two prior Kentucky convictions for drug trafficking, for which he received sentences of five and seven years. Powers also has a 2006 cocaine-trafficking conviction out of Indiana.

Powers argues counsel was ineffective for failing to challenge these convictions as career-offender predicates. *See* D.E. 69 at 7-13. To show ineffectiveness, Powers must show a reasonable probability that such a challenge would have been successful. This he cannot do.

Powers argues that the state statutes of conviction are overbroad, and thus cannot be career-offender predicates, under the "categorical approach" that courts use to evaluate potential predicate crimes. D.E. 69 at 7-13. He says the Kentucky trafficking statute is overbroad because Kentucky schedules some drugs (propiram and hashish) that are not scheduled under the federal scheme. D.E. 61 at 8.

As to K.R.S. § 218A.1412, the Sixth Circuit has already addressed the question about the differences between the federal drug schedule and state drug schedules. And that Court held that § 218A.1412 is a proper career-offender predicate. The Court in *Reed* noted that the Court in *United States v. Jones*, 81 F.4th 591, 598 (6th Cir. 2023), already "held that 'state-law controlled substance offenses need not define controlled substances according to the [federal] Controlled Substances Act to count under § 4B1.2(b),'" and found itself "bound by that precedent." *United States v. Reed*, 163 F.4th 338, 368 (6th Cir. 2025).[1] This Court is also bound by *Jones* (and *Reed*,

---

[1] The movant in *Reed* (actually Reed's codefendant Swanagan) admittedly argued this issue "to preserve it for *en banc* or United States Supreme Court review." *Reed*, 163 F.4th at 368. But a PACER search indicates no motion for *en banc* review or petition for writ of certiorari was filed.

which concerned K.R.S. § 218A.1412).  The fact that Kentucky's list of controlled substances does

not perfectly track the federal drug schedule does not mean a Kentucky trafficking conviction is

not a "controlled substance offense."  This rule was also upheld by the Sixth Circuit in *Rogers*:

> Rogers argues that because the list of controlled substances criminalized under Michigan law includes a substance—synthetic equivalents of marijuana—that is not prohibited under federal law, his prior conviction cannot serve as a predicate controlled-substance offense.  We recently rejected this very argument in *United States v. Jones* and held that "state-law controlled substance offenses need not define controlled substances according to the Controlled Substances Act to count under § 4B1.2(b)" because the Guidelines explicitly incorporate state and federal law into a "controlled substance offense" analysis.  81 F.4th at 598 (citation omitted).  Accordingly, the fact that Michigan may criminalize some substances that are not criminalized under federal law does not prevent conduct prohibited under the Michigan statute from qualifying as a predicate offense.

*United States v. Rogers*, No. 23-1663, 2024 WL 4785333, at *6 (6th Cir. Nov. 14, 2024), *cert.*

*denied*, 145 S. Ct. 1956 (2025).

Magistrate Judge Atkins has also explained:

> The Sixth Circuit also recently discussed this issue in *United States v. Sheffey*, 818 Fed. Appx. 513 (6th Cir. 2020), and *United States v. Jones*, 81 F.4th 591 (6th Cir. 2023).  In *Sheffey*, the Sixth Circuit held that there is "no requirement that the particular controlled substance underlying a state conviction also be controlled by the federal government."  818 Fed. App'x. at 520 (quoting *United States v. Smith*, 681 Fed. App'x 483, 489 (6th Cir. 2017)).  "**The fact that [a state] may have criminalized the 'manufacture, import, export, distribution, or dispensing' of some substances that are not criminalized under federal law does not prevent conduct prohibited under the [state] statute from qualifying, categorically, as a predicate offense.**"  *Id.*  Further, in *Jones*, the Sixth Circuit declined to impose a bright line rule that "a controlled substance offense must contain a substance listed in the Controlled Substances Act."  81 F.4th 591, 599 (6th Cir. 2023), *cert. denied*, 144 S. Ct. 611 (2024).  *Jones* held that U.S.S.G. § 4B1.2(b) allows courts to use state law to define controlled substance offense.  *Id.*
>
> . . . .  While [the defendant] points to Seventh Circuit opinions that may support his view, this Court is bound by Sixth Circuit precedent unless it is overruled by either the Court sitting *en banc* or the United States Supreme Court.  *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 460 (6th Cir. 1998).  Accordingly, because [the defendant's] proposed challenge would be unsuccessful, neither trial counsel nor appellate counsel erred when they failed to object to the career offender enhancement.

*United States v. Jeffrey Maurice Robinson*, No. 5:21-CR-64-DCR-EBA-1, 2024 WL 4493670, at *5 (E.D. Ky. July 25, 2024) (emphasis added), *recommendation adopted*, 2024 WL 4249839 (E.D. Ky. Sept. 20, 2024); *see also United States v. James Earl Robinson*, No. 22-1230, 2023 WL 8437242, at *2-3 (6th Cir. Dec. 5, 2023); *United States v. Jeffrey Maurice Robinson*, No. 21-6217, 2022 WL 22991807, at *4 (6th Cir. Oct. 18, 2022) (rejecting the same career-offender predicate argument on direct appeal); *United States v. James Clark III*, 46 F.4th 404, 408 (6th Cir. 2022) (looking to both federal and state law to enumerate controlled substances); *Rolak v. United States*, No. 20-CR-20396, 2026 WL 870474, at *5 (E.D. Mich. Mar. 30, 2026) (relying on *Reed* and *Jones* for the proposition that "state-law controlled substance offenses need not define controlled substances according to the Controlled Substances Act to count under § 4B1.2(b)"); *Rolando Clark v. United States*, No. 1:23-CV-950, 2024 WL 4970022, at *7 (W.D. Mich. Dec. 4, 2024) (finding under *Jones* that "any argument by Defendant that Michigan criminalizes a broader range of substances than federal law is misplaced, as the Sixth Circuit has now clarified that the Guidelines' definition of a controlled substance offense is not 'limited to substances criminalized under the Controlled Substances Act'"), *appeal dismissed*, No. 25-1565, 2025 WL 2709410 (6th Cir. Aug. 22, 2025).

The same analysis applies here. Powers has not established deficient performance or prejudice on this theory. Any argument of counsel that Powers's Kentucky trafficking convictions were not career-offender predicates would have been futile. And, because Powers's legal argument about his Indiana conviction is the same (that Indiana trafficking can involve drugs not found on the federal schedule, D.E. 61 at 8), this argument is also foreclosed by the same Sixth-Circuit precedents.

Powers also originally argued that his prior convictions do not qualify as predicates for a *statutory* sentencing enhancement under 21 U.S.C. §§ 841(b)(1)(A) & 851(a). D.E. 50 at 8. But, as the Court has already explained, Powers was not subject to a *statutory* prior-felony sentencing enhancement. D.E. 57 at 6-7. His statutory sentencing range was the base range for a person convicted of conspiracy to distribute 500 grams or more of a methamphetamine mixture.

## IV. Failure to File Notice of Appeal

### A. Legal Standards

The Court now turns to Powers's allegation that, despite his instructions, counsel failed to file a notice of appeal. The law is clear that "the failure to perfect a direct appeal, in derogation of a defendant's actual request, is a *per se* violation of the Sixth Amendment." *Campbell v. United States*, 686 F.3d 353, 358 (6th Cir. 2012) (quoting *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998). Failing to file a notice of appeal when a defendant requests one satisfies both prongs of the ineffective-assistance-of-counsel test of *Strickland v. Washington*, 466 U.S. 668 (1984). *See Campbell*, 686 F.3d at 357 (discussing *Roe v. Flores-Ortega*, 528 U.S. 470 (2000)). In such cases, prejudice is presumed (and this is not a rebuttable presumption). *Ludwig*, 162 F.3d at 459. It matters not whether any appeal would be successful. *Peguero v. United States*, 526 U.S. 23, 28 (1999). And the same rule applies even when the defendant waived the right to appeal. *Garza v. Idaho*, 586 U.S. 232, 237 (2019). The remedy for this type of *Strickland* violation is a delayed appeal. *Garza*, 586 U.S. at 247; *Campbell*, 686 F.3d at 360.

Accordingly, if Powers meets his burden of showing that he asked counsel to appeal, but counsel did not, then Powers's § 2255 motion must be granted, and he must be given an opportunity to file a direct appeal. And Powers must also prove that any request to file an appeal was clear and unequivocal. *United States v. Ciesielski*, No. 1:21-CR-20485, 2025 WL 1001479,

9

at *10 (E.D. Mich. Apr. 3, 2025) (quoting at *Campbell*, 686 F.3d at 355); *see also United States v. Alexander*, No. 1:12-CR-414, 2015 WL 13187289, at *2 (N.D. Ohio Jan. 21, 2015) (granting a delayed appeal when the petitioner's testimony "was clear, consistent and unequivocal that he instructed [trial counsel] to file an appeal in a timely manner"); *Henry v. United States*, No. 3:13-CV-0824, 2014 WL 5529402, at *4 (M.D. Tenn. Oct. 30, 2014) (denying a delayed appeal when there was no express and unequivocal request); *recommendation adopted*, 2014 WL 2811816, at *9 (M.D. Tenn. June 23, 2014) (requiring an unequivocal statement); *United States v. Nelson*, No. 1:08-CR-069, 2011 WL 9517574, at *2 (S.D. Ohio Oct. 14, 2011), *supplemented*, 2011 WL 9517573 (S.D. Ohio Nov. 8, 2011) (requiring an express and unequivocal instruction), *report and recommendation adopted*, 2012 WL 5839520 (S.D. Ohio Nov. 16, 2012), *and report and recommendation adopted*, 2012 WL 5839520 (S.D. Ohio Nov. 16, 2012).

And "the defendant bears the burden to prove he or she made the unequivocal request by a preponderance of the evidence." *Ciesielski*, at *10. (citing *United States v. Tapp*, 491 F.3d 263, 266 (5th Cir. 2007)); *see also United States v. Howard*, No. 2:15-CR-22-DLB-HAI-3, 2019 WL 1011813, at *2 (E.D. Ky. Mar. 4, 2019) (granting a delayed appeal when "[the petitioner's] testimony was unequivocal in asserting that he asked his attorney to immediately appeal, while [trial counsel's testimony] was hesitant").

### B. Evidence & Argument

In his form petition, Powers accurately reports that he was sentenced on August 6, 2024. D.E. 50 at 5. He states, "On or about 8-13-2024, Powers told counsel to enter a Notice of Appeal so he could challenge the use of his prior state convictions," but counsel failed to do so. *Id.*[2] In

---

[2] Although not strictly relevant to the question of whether Powers requested an appeal, the Court observes that Powers alleges he instructed counsel to appeal—specifically—the issue concerning his sentence-enhancing predicate felony convictions. D.E. 69 at 4. For the reasons described above in Section III, any appeal of Powers's career-offender designation would have been unsuccessful, if not frivolous.

his subsequent memorandum, Powers states he "explicitly directed his trial counsel to file a notice of appeal," but Powers did not specify when or how this occurred.  D.E. 61 at 4.

Attorney Love, in her subsequent affidavit, provided her timeline of events following the August 6, 2024 sentencing:

> . . . . [R]ight after his sentence was verbally announced on August 6, 2024, I asked Mr. Powers to indicate in writing whether he wanted to appeal his sentence. On the hand-written form, he checked the box that he did not want to appeal and he signed his name. (See attached).
>
> On August 8, 2024, Mr. Powers was moved to Grayson Detention Center. On August 9, 2024, I mailed him a copy of the Judgment with a letter.  In that letter, I wrote: "It is my understanding, based on our discussion immediately following your sentencing on August 6, 2024, that you do not intend to appeal.  However, should you change your mind, please remember that you must file a notice of appeal within fourteen days of when the Judgment was entered (August 7, 2024), and you must notify me immediately."  (See attached).  I've reviewed the call logs from Pike County Detention Center and Grayson County Detention Center and my phone numbers (business and cellular) are not on Mr. Powers's call logs.
>
> **I did not receive any phone calls or mail correspondence from Mr. Powers at any time following his sentencing hearing.**

D.E. 65-1 at 2-3, ¶¶ 8-10 (emphasis added).  Ms. Love also states that she received a call from Powers's mother.  But this was in "early September 2024" and was not a request to appeal.  *Id*. at 3.

Ms. Love's affidavit is accompanied by the handwritten notation, signed by Powers, wherein he states on August 6, 2024, that he "do[es] not wish to appeal [the] sentence or case." D.E. 65-2.  Other attachments include the referenced post-judgment letter (D.E. 65-3) and a copy of Powers's jail call logs (D.E. 65-4, -5).

In his reply brief, Powers addresses Ms. Love's materials:

While these exhibits confirm that Powers initially declined to appeal at the time of sentencing, they fail to address his subsequent request made within the fourteen-day appeal period that counsel file the notice of appeal.

Powers has consistently asserted that he changed his mind shortly after sentencing approximately one week later after learning of the categorical approach issue from other inmates. Upon realizing that his career-offender designation and § 841 enhancement might be legally flawed, he immediately attempted to contact counsel. When she did not answer his direct jail call, Powers called his mother and asked her to initiate a three-way call with counsel. During that three-way conversation, Powers explicitly instructed counsel to file a notice of appeal on his behalf.

The Government's reliance on jail call logs is misplaced. The logs do not actually show the content or unsuccess of calls, only whether calls were placed. Nor do they reflect that a three-way call was initiated through his mother. If the logs were truly complete they would show the initial unanswered call to counsel and the follow-up call to his mother, which corroborates Powers account.

D.E. 69 at 4-5. There is also a footnote which states:

Attached hereto as Exhibit A is the sworn declaration of Movant Arthur Clinton Powers, Jr., and Exhibit B is the sworn declaration of his mother, each attesting to the three-way phone call during which Powers expressly instructed counsel to file a notice of appeal. These affidavits directly refute the Government's assertion that [] such request was not made and corroborate the factual narrative stated herein.

*Id.* at 5 n.1.

These two alleged sworn declarations were not included along with Powers's reply brief, which the Court received on December 11, 2025.[3] The Court alerted Powers to this deficiency and ordered him to "file his and his mother's sworn declarations into the record for the Court's review" by January 16, 2026. D.E. 70. The affidavits still did not materialize. On March 3, 2026, the Court entered its Order announcing its intention to set an evidentiary hearing on this appeal-waiver claim. D.E. 72.

On March 20, 2026, the Court finally received an affidavit from Powers, dated March 17, 2026. D.E. 73-2; D.E. 74. Powers's sworn affidavit tracks his reply brief in that he recounts a three-way call with Ms. Love and his mother "which took place within the fourteen-day appeal

---

[3] While Powers's footnote in his reply memorandum states that the declarations are "[a]ttached hereto" as Exhibits A and B, the same page confusingly describes them as "forthcoming affidavits." D.E. 69 at 5.

window." *Id.* ¶ 9. Powers says that during the call he "told Ms. Love clearly that I wanted to appeal and that she should file a notice of appeal on my behalf." *Id.*

To resolve the factual dispute (the differing memories of Powers and Ms. Love), the Court announced its intention to conduct a hearing, provisionally appointed counsel, and instructed Powers to file a CJA 23 financial affidavit. D.E. 72. But Powers instead filed objections to certain aspects of the Court's Order and made clear that he did not wish to testify at any evidentiary hearing. D.E. 73. Powers also said his mother would not testify, and he suggested that he be allowed to testify remotely by video. *Id.* at 5-6. In the alternative, Powers suggested the claim could be resolved on the existing record or else he sought "leave to withdraw" this IAC claim. *Id.* at 6.

The Court notes that Powers is a savvy litigant and the positions taken in his filings demonstrate full awareness of the issues presented, possible outcomes, and consequences of the choices he makes. The Court detailed the differences between Powers's factual narrative and that of his counsel, Ms. Love, in its ruling describing the need for a hearing and setting in motion steps to obtain counsel for Powers, at no charge to him, to assist in that hearing. D.E. 72. He chose to respond by admitting his corroborative evidence from his mother cannot be proven at a hearing, and by describing his evaluation of the various consequences of that development. *See* D.E. 73 at 5-6 ("Defendant respectfully request[s] that the Court consider resolving the claim based on the existing record, including the affidavits already submitted . . . If the Court determine[s] that an evidentiary hearing is necessary and the Defendant's presence is required, Defendant respectfully elects leave to withdraw the ineffective-assistance claim[.]" At a hearing, the crucial dynamic would be an evaluation of witness credibility, including motive, in light of the entire evidentiary record. A video hearing would not allow a proper presentation of that dynamic. The Court follows

13

Powers's own logical step-by-step analysis and finds that Powers has, knowingly, voluntarily, and intelligently withdrawn this claim.

### C. Analysis

In the alternative, the evidentiary dynamic now means that Powers cannot carry his burden to establish entitlement to relief. Certain aspects of the timeline appear uncontested. Ms. Love consulted with Powers immediately after the August 6, 2024 sentencing and asked whether he wished to file an appeal. D.E. 65-1 at 2. In fact, on the day of sentencing, he signed a note explicitly disclaiming any "wish" to appeal his "sentence or case." D.E. 65-2. Ms. Love's letter to Powers, issued three days later, memorializes that Powers did not "intend to appeal," but instructed him that he had until August 21, 2024, to file a notice if he changed his mind. D.E. 65-3. Powers appears to accept these facts. D.E. 69 at 4.

Ms. Love then testifies that she "did not receive any phone calls or mail correspondence from Mr. Powers at any time following his sentencing hearing." D.E. 65-1 at 3 ¶ 10. And she provides call logs to show Powers did not call her from the jail(s) during the relevant period. D.E. 65-4, 65-5.

After Ms. Love's affidavit and supporting materials were filed, Powers modified his claim. In his reply brief, Powers asserted that the call logs did not capture his unanswered calls to Ms. Love. D.E. 69 at 5. He says the logs also would not have captured a three-way call that was initiated by his mother. *Id*. at 4-5. And, as noted, the promised supporting affidavits were not attached to the reply brief. *See id* at 5 n.1. Powers later filed his own affidavit, dated March 17, 2026. D.E. 74. There has been no affidavit from Powers's mother, and Powers now says his mother "advised that she does not recall the events surrounding the phone call and does not wish to participate as a witness." D.E. 73 at 5.

14

As a legal matter, Powers's late-asserted scenario is forfeited. It has long been established that "a party, including a movant in a motion under § 2255, may not raise an argument for the first time in a reply brief." *United States v. Turek*, No. 5:11-CR-29, 2015 WL 5838479, at *6 (E.D. Ky. October 6, 2015) (quoting *Hadley v. United States*, No. 1:06-CR-05, 2010 WL 2573490, at *6 (W.D. Mich. June 22, 2010)); *see also Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010); *United States v. Crozier*, 259 F.3d 503, 517 (6th Cir. 2001). This is consistent with Rules 2(b) & (c) of the Rules Governing Section 2255 Proceedings, which establishes that the petitioner's initial § 2255 motion "must specify all the grounds for relief available to the moving party *[and] state the facts supporting each ground*" (emphasis added). Allowing a habeas petitioner to present new claims for the first time in his reply brief "undermines the adversary process because the government has no opportunity to respond to these new claims." *United States v. Jones*, No. 5:14-cr-119-JMH, 2018 U.S. Dist. LEXIS 178459, at *13 (E.D. Ky. Oct. 17, 2018). This is why issues raised for the first time in a reply brief are deemed waived. *United States v. Goodson*, No. 6:24-CR-15-CHB-HAI, 2025 WL 3907713, at *10 (E.D. Ky. Nov. 19, 2025), *recommendation adopted*, 2025 WL 3708889 (E.D. Ky. Dec. 22, 2025); *Glover v. Boardman*, No. 1:18-CV-1134-DCN, 2022 WL 17489991, at *9 (N.D. Ohio Nov. 1, 2022) (citing *Scottsdale Ins. Co v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008)), *recommendation adopted*, 2022 WL 17487817 (N.D. Ohio Dec. 7, 2022). *Lisy v. Cuyahoga Cnty.*, No. 1:20-CV-1416, 2021 WL 3737945, at *8 n.6 (N.D. Ohio Aug. 23, 2021) ("This argument is improperly raised in a reply brief and the Court declines to consider it.)."

Based on these principles, the Court finds that Powers's new assertion—that he contacted Ms. Love to seek an appeal v*ia a three-way phone call initiated by his mother*—is waived. These facts are crucial supporting facts that, if true, could have, and should have, been raised in his initial

15

memorandum (D.E. 61).  Because this did not occur, the alleged three-way phone call is off the table as a viable factual assertion.  What is left is a self-serving statement that Powers contacted Ms. Love within the appeal period.  But this assertion is contradicted by Ms. Love's affidavit and inconsistent with other aspects of the record, including Powers's written waiver of appeal (D.E. 65-2).  Powers bears the burden on all issues.  The Court must draw a negative inference from his desire to avoid testifying in person, meaning his evidence essentially boils down to proffer that cannot be effectively cross-examined.  The Court accordingly finds as a factual matter that Powers did not, in fact, unequivocally request an appeal during the relevant period.  As a result, there is no basis for finding deficient performance.

## V.  Conclusion

For the reasons explained above, the undersigned **RECOMMENDS** that Powers's § 2255 motion (D.E. 50) be **DENIED.**

The undersigned further **RECOMMENDS** that no Certificate of Appealability issue. Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  *See also* Rule 11 of the Rules Governing Section 2255 proceedings.  This standard is met if the defendant can show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).  The resolution of Powers's claims is not debatable and do not warrant encouragement to proceed further.

Finally, the parties are notified that any objection to, or argument against, denial of this motion must be asserted properly and in response to this Report and Recommendation.  The Court

16

directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Report and Recommendation, issued under subsection (B) of the statute. *See also* Rules Governing Section 2255 Proceedings, Rule 8(b). Within **fourteen days** after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Judge. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Judge and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

This the 17th day of April, 2026.

**Signed By:**

**Hanly A. Ingram**

**United States Magistrate Judge**